IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                v.<br><br>$4,480,466.16 IN FUNDS SEIZED FROM BANK OF AMERICA ACCOUNT ENDING IN 2653;<br><br>$146,370.00 IN FUNDS SEIZED FROM BANK OF AMERICA ACCOUNT ENDING IN 0252;<br><br>$77,437.59 IN FUNDS SEIZED FROM CHARLES SCHWAB ACCOUNT ENDING IN 8588;<br><br>$263.47 in FUNDS SEIZED FROM WELLS FARGO ACCOUNT ENDING IN 2092;<br><br>$9,668.28 IN FUNDS SEIZED FROM BANK OF UTAH ACCOUNT ENDING IN 2251;<br><br>$2,814.51 IN FUNDS SEIZED FROM BANK OF UTAH ACCOUNT ENDING IN 8074;<br><br>A 2014 LAMBORGHINI AVENTADOR (VIN ZHWUR1ZD0ELA02916);<br><br>A 2016 FERRARI 488 (VIN ZFF80AMA0G0219421);<br><br>A 2017 BENTLEY CONTINENTAL GT V8 (VIN SCBFH7ZA0HC063118);<br><br>A 2017 MERCEDES-BENZ AMG S63 (VIN WDDUG7JB4HA325733); | Case No. 3:17-CV-2989 |

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>SECOND AMENDED COMPLAINT</u>**                                     **Page 1**

A 2016 MERCEDES-BENZ G63 (VIN
WDCYC7DF4GX258941);

A 2016 DODGE RAM 2500 (VIN
3C6UR5DL1GG314858);

A 2016 BMW ALPINA (VIN
WBA6DC6C54GGK18160);

REAL PROPERTY KNOWN AS 14888
LAKE FOREST DRIVE, DALLAS, TEXAS;

$11,005.00 IN FUNDS SEIZED FROM
CAPITAL ONE ACCOUNT ENDING IN
2713

Defendants *in rem*

## CLAIMANT RETAIL READY CAREER CENTER, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT

Claimant Retail Ready Career Center, Inc. ("RRCC" or "Claimant") files this Brief in

Support of Its Motion to Dismiss Second Amended Complaint, as follows:

## I.
## PRELIMINARY STATEMENT

Thanks to the Court's prior order, the Government's malfeasance has finally been revealed.

We now know that an officer who began an investigation in RRCC three months after he began

working for Veterans Affairs destroyed a $100 million business because he was ignorant of the

law he was tasked to enforce.  The suggestion that RRCC was engaged in a fraudulent scheme to

violate the 85/15 rule is ridiculous.  The Government knows that RRCC's compliance with 85/15

was repeatedly audited and confirmed by the Texas Veterans Commission and U.S. Department

of Veteran Affairs, and the Government has had RRCC's student records, which also confirm

compliance, since the seizure in September 2017.  The Government's supporting affidavit

mentions none of the hard evidence and instead relies on vague hearsay innuendo from former

employees who were not in a position to know the facts that they purport to know.  Even then, the supporting affidavit **confirms** that RRCC was actively attempting to comply with the 85/15 rule and no intentional effort at deception had occurred.

Claimant is preparing a motion for summary judgment with the evidence that the Government leaves out.  However, the Court need not wait for the submission of evidence and should proceed to dismiss the Government's Second Amended Complaint because the Government has failed to state a claim upon which relief can be granted.

## II.
## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

**A.    Plaintiff's Second Amended Complaint Is Again Devoid Of Factual Allegations.**

The seven-page Second Amended Complaint ("Complaint") again only has one sentence purporting to provide the factual basis for Plaintiff's claims, which is found in the section entitled "Facts and Basis for Forfeiture."[1]  That sentence states:

> The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is derived from proceeds traceable to a violation, violations, or conspiracy to violate 18 U.S.C. § 1031, 18 U.S.C. §§ 286 and 371, 18 U.S.C. § 641, 18 U.S.C. § 1001, 18 U.S.C. § 1341, and 18 U.S.C. § 1343.[2]

This sentence does not even state a "formulaic recitation of the elements of a cause of action," much less state facts that, if true, would support Plaintiff's claims.[3]

---

[1] *See* United States Second Amended Complaint for Forfeiture (Docket #92) at 5, ¶ 8.

[2] *Id.*

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                                      **Page 3**

Unlike previously, Claimant is now able to view the purported "Verification Affidavit." As discussed below, the Verification Affidavit does not provide a plausible basis for the requested relief.

**B.    The 85/15 Rule**

The 85/15 rule originates in a Congressional statute prohibiting the Secretary of Veterans Affairs from approving the enrollment of another veteran eligible for veterans education benefits if 85% of the students already enrolled are receiving benefits from the institution or the VA.[4] However, the Secretary is permitted to modify the rule by regulation.[5]

The Secretary's version of the 85/15 rule is set forth in 38 C.F.R. § 21.4201.  The general rule is:

> Except as otherwise provided in this section the Department of Veterans Affairs shall not approve an enrollment in any course for an eligible veteran, not already enrolled, for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA under title 38, U.S.C., or under title 10, U.S.C. This restriction may be waived in whole or in part.[6]

The method for calculating compliance with this requirement is set forth in 38 C.F.R. 42.4201(e)(3)(i):

---

[4] *See* 38 U.S.C.A. § 3680A(d)(1) ("Except as provided in paragraph (2) of this subsection, the Secretary shall not approve the enrollment of any eligible veteran, not already enrolled, in any course for any period during which the Secretary finds that more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees, or other charges paid to or for them by the educational institution or by the Department of Veterans Affairs under this title or under chapter 106 of title 10.").

[5] 38 U.S.C.A. § 3680A(d)(1) ("The Secretary may waive the requirements of this subsection, in whole or in part, if the Secretary determines, pursuant to regulations which the Secretary shall prescribe, it to be in the interest of the eligible veteran and the Federal Government.").

[6] 38 C.F.R. § 21.4201(a).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                         **Page 4**

> To determine if the requirement of paragraph (a) of this section has been met . . . the full-time equivalent, nonsupported students as defined by paragraph (e)(2) of this section will be compared to the full-time equivalent students enrolled in the course. If the full-time equivalent, nonsupported students do not equal at least 15 percent of the total full-time enrollment, the 85–15 percent requirement has not been met for the course.[7]

A student is considered "nonsupported" if the student is not receiving VA benefits and the student is in certain categories, such as (1) "students who are not veterans or reservists, and are not in receipt of institutional aid"[8] or (2) "Undergraduates and non-college degree students receiving any assistance provided by an institution, if the institutional policy for determining the recipients of such aid is equal with respect to veterans and nonveterans alike."[9]

A school is required to submit periodic reports containing the calculation required by 38 C.F.R. § 21.42.01(e)(3)(i).[10]  When processing payments for new enrollments, the government relies upon the school's submission of the calculation.[11]  An educational institution is required to maintain and the government is entitled to inspect the records relating to enrollment.[12]  The government can suspend payments if the rules are violated.[13]

---

[7] 38 C.F.R. § 21.4201(e)(3)(i).

[8] 38 C.F.R. § 21.4201(e)(2)(i).

[9] 38 C.F.R. § 21.4201(e)(2)(iv).

[10] 38 C.R.F. § 21.4201(f)(2).

[11] 38 C.R.F. § 21.4201(g).

[12] *See* 38 C.F.R. § 21.4209.

[13] *See* 38 C.F.R. § 21.4210(d).

C.     **The Government's Agent Does Not Understand The 85/15 Rule.**

The Government relies on the affidavit of Miguel Coias to supply the facts lacking in the Second Amended Complaint.  It is clear that Mr. Coias does not understand the 85/15 rule.  For instance, Mr. Coias seems to believe that the 85/15 rule is based on revenue and not enrollment.[14] Mr. Coias notes that the amount of funds received by RRCC from the VA and the amount of funds received by RRCC from other sources and appears to conclude that the absence of proportionate revenue from non-VA sources indicates a violation of 85/15.[15]  However, the applicable regulation explicitly provides that students receiving scholarships from the RRCC would be "non-supported"[16] and such scholarships would not be reflected as revenue in RRCC's bank statements. Accordingly, the absence of "revenue" from scholarship recipients is in no way indicative of a violation of 85/15.

Additionally, Mr. Coias contends that 100% of the students in the initial classes were veterans;[17] however, the scholarship exception in the 85/15 rule applies to veterans and non-veterans alike.[18]  The question is not whether the students were veterans but whether the VA was paying any of the tuition and fees for more than 85% of the veterans in the course.

---

[14] *See* Verification Affidavit in Support of Second Amended Forfeiture Complaint ("Coias Affidavit") at 12, ¶ 26, which is part of the Appendix in Support of United States' Motion to Seal Documents and Brief in Support (Doc. 91-1).

[15] *See id.*  Interestingly, Coias seems to suggest that 487 non-VA supported students would have been sufficient to comply with 85/15 but fails to disclose to the Court the number of non-VA supported students enrolled at RRCC.  *See id.*  His hiding of that information is likely deliberate because the number of such students exceeded 487.  Mr. Coias either fails to understand that 85/15 is based on enrollment or Mr. Coias is deliberately misleading the Court.

[16] 38 C.F.R. § 21.4201(e)(2)(iv).

[17] *See* Coias Affidavit at 13, ¶ 29.

[18] 38 C.F.R. § 21.4201(e)(2)(iv).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                                    **Page 6**

Another example of Mr. Coias' ignorance is his suggestion that Mr. Davis' interpretation of the 85/15 rule was wrong.[19]  Mr. Coias acknowledges that Mr. Davis believed that only 85% of the students could be funded through GI money while the other 15% had to be funded through scholarships, people paying out of pocket, utilizing financing, or receiving a third-party contractor scholarship.[20]  Mr. Davis' understanding of the 85/15 rule is precisely what the regulation provides.[21]

Once Mr. Davis' understanding of the 85/15 rule is recognized to be correct, the rest of the allegations of Mr. Coias actually support the conclusion that RRCC was attempting to comply with the 85/15 rule, not attempting to avoid it.  For instance, Mr. Gaines and Mr. Northcutt both purportedly told Mr. Coias that scholarships were provided to meet the 15% criteria.[22]  This is evidence of an effort to ensure compliance with 85/15, not evidence of an intent to deceive.

Perhaps the greatest proof that Mr. Coias does not understand the 85/15 rule is the complete absence of any reference to the types of evidence that would actually show a violation of the rule. The Government seized all of RRCC's student and financial records in September 2017.  It is a straightforward task—performed during each audit of RRCC—to count the number of VA supported students and non-VA supported students in each class and determine if the 85/15 ratio was met.  Mr. Coias was unable to identify even a single instance when the RRCC had failed to comply with the 85/15 rule, much less an example of RRCC lying about it.

---

[19] *See* Coias Affidavit at 13, ¶ 30.

[20] *See id.*; *id.* at 15-16, ¶ 38.

[21] 38 C.F.R. § 21.4201(e).

[22] *See, e.g.,* Coias Affidavit at 14, ¶ 32; *id.* at 16, ¶ 39.

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                    **Page 7**

**D.**   **The Relationship Between Claimant And The Claimed Property.**

As set forth in Retail Ready Career Center, Inc.'s Verified Claims And Counterclaims, Claimant is the owner of $4,480,466.16 in Funds Seized From Bank Of America Account Ending In 2653 and $146,370.00 in Funds Seized from Bank of America Account Ending in 0252 (together, the "Claimed Property").[23]

### III.
### APPLICABLE STANDARDS

**A.**   **The Relationship Between Statutes Governing Forfeiture And The Federal Rules Of Civil Procedure.**

On April 25, 2000, Congress enacted the Civil Asset Forfeiture Reform Act Of 2000 to "provide a more just and uniform procedure for Federal civil forfeitures."[24]  That act added 18 U.S.C. 983 entitled "General rules for civil forfeiture proceedings."[25]  Under that section, the United States is required to file a "complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property . . ."[26]  Similarly, a person claiming an interest in seized property may file a claim "in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims."[27]  In 2006, the

---

[23] *See* Retail Ready Career Center, Inc.'s Verified Claims And Counterclaims (Docket # 15) at 6, ¶¶ 16-19.

[24] Civil Asset Forfeiture Reform Act Of 2000, Pub. L. No. 106–185, 114 Stat 202 (April 25, 2000).

[25] *See id.*

[26] *See* 18 U.S.C. § 983(a)(3).

[27] *See* 18 U.S.C. § 983(a)(4)(A).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                        **Page 8**

Supplemental Rules for Admiralty or Maritime Claims were amended to become the Supplemental Rules for Admiralty or Maritime Claims and Assert Forfeiture Actions ("Supplemental Rules").[28]

Pursuant to the Supplemental Rules, the "Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."[29]  Supplemental Rule G applies to "a forfeiture action in rem arising from a federal statute."[30]

**B.     Standards For A Motion To Dismiss Under Rule 12(b)(6) Before Considering The Impact Of The Supplemental Rules.**

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.[31]  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."[32] To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the

---

[28] *See* FED. R. CIV. P. SUPPLEMENTAL RULE G, 2006 cmt ("Rule G is added to bring together the central procedures that govern civil forfeiture actions. Civil forfeiture actions are in rem proceedings, as are many admiralty proceedings. As the number of civil forfeiture actions has increased, however, reasons have appeared to create sharper distinctions within the framework of the Supplemental Rules.").

[29] FED. R. CIV. P. SUPPLEMENTAL RULE A(2).

[30] FED. R. CIV. P. SUPPLEMENTAL RULE G(1).

[31] *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
SECOND AMENDED COMPLAINT**                                          **Page 9**

plaintiff.[34]   But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[35] A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[36] Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[37]

## C.      The Impact Of The Supplemental Rules On A Motion To Dismiss.

Supplemental Rule G(5) provides for "Responsive Pleadings."[38]   A person claiming an interest in property may contest forfeiture by filing a claim.[39]   Supplemental Rule G(5)(b) provides:

> A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim.  A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer.[40]

Supplemental Rule G(8)(b) provides additional information regarding motions to dismiss.[41]   A claimant "who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)."[42]

---

[34] *See Gines v. D.R. Horton, Inc*., 699 F.3d 812, 816 (5th Cir. 2012).

[35] *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007).

[36] *Twombly*, 550 U.S. at 555.

[37] *Id*.

[38] *See* Fed. R. Civ. P. Supplemental Rule G(5).

[39] *See* Fed. R. Civ. P. Supplemental Rule G(5)(a).

[40] Fed. R. Civ. P. Supplemental Rule G(5)(b).

[41] *See* Fed. R. Civ. P. Supplemental Rule G(8)(b).

[42] Fed. R. Civ. P. Supplemental Rule G(8)(b)(i).

CLAIMANT RETAIL READY CAREER CENTER, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
SECOND AMENDED COMPLAINT                                                **Page 10**

In evaluating such a motion, "the sufficiency of the complaint is governed by Rule G(2)."[43] Supplemental Rule G(2) requires a complaint to: "(a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."[44]

The government's "burden of proof at trial" is determined by 18 U.S.C. § 983, which provides that in a civil forfeiture suit, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."[45]  Additionally, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense . . . the Government shall establish that there was a substantial connection between the property and the offense."[46]

In summary, in order for a complaint to be "sufficient" and, thus, survive a motion to dismiss, the complaint must comply with each of the requirements of Supplemental Rule G(2).[47] With respect to the sixth requirement found in Supplemental Rule G(2)(f), the complaint must

---

[43] FED. R. CIV. P. SUPPLEMENTAL RULE G(8)(b)(ii).

[44] FED. R. CIV. P. SUPPLEMENTAL RULE G(2).

[45] *See* 18 U.S.C. § 983(c)(1).

[46] *See* 18 U.S.C. § 983(c)(3).

[47] *See supra* nn. 43-44 and accompanying text.

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
SECOND AMENDED COMPLAINT**                                     **Page 11**

"state sufficiently detailed facts to support a reasonable belief that"[48] that the government will be able to "establish, by a preponderance of the evidence, that the property is subject forfeiture."[49] Additionally, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense,"[50] the complaint must "state sufficiently detailed facts to support a reasonable belief that"[51] "the Government shall establish that there was a substantial connection between the property and the offense."[52]

## IV.
## ARGUMENTS AND AUTHORITIES

**A.    Half Of The Government's Legal Theories Are Not Even Statutorily Permitted Grounds For Civil Forfeiture.**

The Government has finally limited itself to the only applicable statue governing civil forfeitures:  18 U.S.C. § 981(a)(1)(C).[53]  Relying on that statue, the Government alleges that the Claimed Property is subject to forfeiture because it "is derived from proceeds traceable to a violation, violations, or conspiracy to violate 18 U.S.C. § 1031, 18 U.S.C. §§ 286 and 371, 18 U.S.C. § 641, 18 U.S.C. § 1001, 18 U.S.C. § 1341, and 18 U.S.C. § 1343."[54]

---

[48] *See* FED. R. CIV. P. SUPPLEMENTAL RULE G(2)(f) ("The complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.").

[49] *See* 18 U.S.C. § 983(c)(1).

[50] *See* 18 U.S.C. § 983(c)(3).

[51] *See* FED. R. CIV. P. SUPPLEMENTAL RULE G(2)(f) ("The complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.").

[52] *See* 18 U.S.C. § 983(c)(3).

[53] *See* Second Amended Complaint at 5, ¶ 8.

[54] *See* Second Amended Complaint at 5, ¶ 8.

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                                        **Page 12**

In another great example of the baseless nature of the Government's case, half of the purported statutory violations cannot even serve as a basis for civil forfeiture.  In particular, only certain identified or incorporated statutory violations can serve as grounds for forfeiture under 18 U.S.C. § 981(a)(1)(C).[55]  Of the seven statutes upon which the Government seeks forfeiture in this case, four of the seven—18 U.S.C. § 1031, 18 U.S.C. §§ 286 and 371, and 18 U.S.C. § 1001—are not included in the list of offenses for which forfeiture can be asserted under 18 U.S.C. § 981(a)(1)(C).[56]  Because, irrespective of the facts, a violation of 18 U.S.C. § 1031, 18 U.S.C. §§ 286 and 371, and 18 U.S.C. § 1001 cannot serve as a basis for forfeiture, the Court should dismiss the Government's claim for forfeiture based on those statutes.

It is worth noting that the Coias Affidavit is almost entirely focused on these invalid theories.  In particular, Mr. Coias makes conclusory claims that the documents submitted to the Texas Veterans Commission and Department of Veterans Affairs were somehow "false."[57]  He appears to have attempted to build some sort of false claims theory; however, the false claims statutes are precisely the statutes not included as permissible grounds for civil forfeiture.[58]  In

---

[55] 18 U.S.C.A. § 981(a)(1)(C) ("The following property is subject to forfeiture to the United States:  **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.").

[56] *See* 18 U.S.C. § 981(a)(1)(C).

[57] *See* Coias Affidavit at 11, ¶ 24.

[58] *See* 18 U.S.C. § 981(a)(1)(C) (not including 18 U.S.C. § 1031 (Major fraud against the United States), 18 U.S.C. §§ 286 (Conspiracy to defraud the Government with respect to claims) and 371 (Conspiracy to commit offense or to defraud United States), and 18 U.S.C. § 1001 (Statements or entries generally).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**SECOND AMENDED COMPLAINT**</u>                                                  **Page 13**

short, the legal theories at the center of Mr. Coias' investigation could never have supported the relief requested by the Government in this case.

Given that the primary thrust of the Government's case is frivolous, the Court should not only dismiss the forfeiture claims based 18 U.S.C. § 1031, 18 U.S.C. §§ 286 and 371, and 18 U.S.C. § 1001 but also refuse the Government an opportunity to amend—for a third time—the Government's deficient after-thought theories based on 18 U.S.C. § 641, 18 U.S.C. § 1341, and 18 U.S.C. 1343.

**B.   The Government Has Failed To Plead A Plausible Claim For Forfeiture Based On 18 U.S.C. § 1341 Or 18 U.S.C. § 1343.**

The civil forfeiture statute permits forfeiture based on "specified unlawful activity" defined in 18 U.S.C. § 1956(c)(7).[59]  That statute incorporates the RICO list in 18 U.S.C. § 1961(1).[60]  The RICO list includes 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).[61]  The Government has failed to plead facts establishing a plausible claim for forfeiture based on 18 U.S.C. § 1341 or 18 U.S.C. § 1343 for at least four reasons.

First, as noted above, the mail and wire fraud theories were clearly after-thoughts for the Government.  This is mostly obviously demonstrated by the omission of any allegation in the Coias Affidavit that would meet the most obvious requisites of mail or wire fraud—namely the use of

---

[59] *See* 18 U.S.C. § 981(a)(1)(C) ("The following property is subject to forfeiture to the United States:  (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.").

[60] 18 U.S.C. § 1956(7)(A) ("the term 'specified unlawful activity' means-- (A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31").

[61] *See* 18 U.S.C. § 1961(1).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                              **Page 14**

the mail or interstate wires.[62]  Of course, because none of the purportedly "false" documents ever went in the mail or left Texas, the Government could not cure this defect even if it wanted to.

Second, the Government has failed to state any facts to show specific intent to defraud.[63] Indeed, the Government's facts establish the opposite.  The Government admits that Jonathan Davis signed the purportedly "false" documents at issue, ran RRCC, and oversaw 85/15 compliance.[64]  The Government repeatedly admits that Mr. Davis believed that 85/15 rule could be met if 15% or more of the students in the courses did not receive VA aid and instead received scholarships, financing, or paid by other means.[65]  Mr. Davis' view (as described by the Government) mirrors the actual regulatory requirements.[66]  Accordingly, there is simply no basis for concluding the Mr. Davis or RRCC specifically intended to defraud anyone.

Third, the Court should look to a similar case involving the 85/15 rule where fraud claims were dismissed.[67]  The court in that case described the components and calculations of the 85/15

---

[62] *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir. 2012) ("To prove wire fraud, the government must prove: (1) a scheme or artifice to defraud; (2) material falsehoods; and (3) the use of interstate wires in furtherance of the scheme."); *United States v. Lucas*, 516 F.3d 316, 339 (5th Cir. 2008) ("a jury must find three elements to support a mail fraud conviction:  '(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud.'").

[63] *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir. 2012) ("Violation of the wire-fraud statute requires the specific intent to defraud, i.e., a 'conscious knowing intent to defraud.'"); *United States v. Lucas*, 516 F.3d 316, 339 (5th Cir. 2008) ("a jury must find three elements to support a mail fraud conviction:  '(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) ***the specific intent to defraud***.'") (emphasis added).

[64] *See, e.g.*, Coias Affidavit at 11, ¶ 24; *id.* at 14-15, ¶ 34.

[65] *See, e.g.*, Coias Affidavit at 13, ¶¶ 30-31; *id.* at 15-16, ¶¶ 38-39.

[66] *See* 38 C.F.R. § 21.4201(e); *see also infra n.* 68.

[67] *U.S. ex rel. Hamilton v. Yavapai Cmty. Coll. Dist.*, CV-12-08193-PCT-PGR, 2015 WL 1522174 (D. Ariz. Apr. 2, 2015).

rule.[68]  In that case, the school awarded scholarships "only to students who had exhausted their VA benefits or were not eligible for VA benefits to cover their tuition."[69]  The court recognized that such a program is consistent with need-based aid available to veterans and non-veterans alike and, thus, did not suggest a violation of 85/15, much less support a fraud claim.[70]  Similarly, the Government's suggestion that RRCC's scholarship program was somehow improper is similarly without merit and no indication of any fraud.[71]

<u>Fourth</u>, the Government has failed to comply with the heightened pleading requirements for fraud found in Federal Rule of Civil Procedure 9(b).[72]  To comply with the rule, the Government needed "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were

---

[68] *U.S. ex rel. Hamilton*, 2015 WL 1522174, at *4.

[69] *U.S. ex rel. Hamilton*, 2015 WL 1522174, at *7.

[70] *U.S. ex rel. Hamilton v. Yavapai Cmty. Coll. Dist.*, 2015 WL 1522174, at *8 ("In sum. there are no factual allegations in the TAC demonstrating that a veteran in need of financial assistance was not eligible for the GA Scholarship Program or that it was the policy of GA or YC to treat veterans and nonveterans differently in determining eligibility for the receipt of financial assistance through the GA Scholarship Program. *See* 38 C.F.R. § 21.4201(e)(2)(iv). Thus, the TAC fails to state a claim for violation of the FCA based on the inclusion as non-supported those students that received financial assistance through the GA Scholarship Program. Accordingly, the claims in Count I related to students receiving financial assistance through the GA Scholarship Program will be dismissed").

[71] *See id.*  It is worth noting that, unlike the *Hamilton* case and contrary to the Government's contention, there were students at RRCC with 100% GI bill eligibility that received scholarships. However, even assuming RRCC had excluded those students from scholarship eligibility (as alleged by the Government), that would put RRCC in the same position as the school in the *Hamilton* case, which the court held complied with the law.  *See id.*

[72] FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**SECOND AMENDED COMPLAINT**</u>                                                   **Page 16**

fraudulent."[73]   Mr. Coias never actually identifies a statement contended to be fraudulent or explains why such a statement is fraudulent.  Indeed, given that Mr. Coias does not understand the 85/15 rule, it is not clear he would even be able to identify a false statement if he saw one.

Based on the foregoing, it is clear that the Government has failed to state a plausible basis for forfeiture based on 18 U.S.C. § 1341 or 18 U.S.C. § 1343, and the claims should be dismissed.

**C.**   **The Government Has Failed To Plead A Plausible Claim For Forfeiture Based On 18 U.S.C. § 641.**

As noted above, the civil forfeiture statute permits forfeiture based on "specified unlawful activity" defined in 18 U.S.C. § 1956(c)(7).[74]   Included in that statute's definition of "specified unlawful activity" is the offense of 18 U.S.C. § 641.[75]   That statute provides for a penalty for:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . .[76]

The Government has failed to plead facts establishing a plausible claim for forfeiture based on 18 U.S.C. § 641 for at least three reasons.

<u>First</u>, this theory appears to be even more of an after-thought than the mail and wire fraud theories.  The Coias Affidavit does not even use the words "embezzle," "steal," "purloin" or

---

[73] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

[74] *See* 18 U.S.C. § 981(a)(1)(C) ("The following property is subject to forfeiture to the United States:  (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.").

[75] *See* 18 U.S.C. § 1956(c)(7)(d).

[76] 18 U.S.C. § 641.

"knowingly convert," much less allege facts suggesting that such an act occurred.   The Coias Affidavit only addresses a purported "fraud," not any sort of theft.

Second, 18 U.S.C. § 641 requires proof of intent.[77]   As noted above, the facts alleged regarding Mr. Davis' intent was that he was attempting to comply with the 85/15 rule as he understood it,[78] and his understanding matches the words of the rule and its interpretation by courts.[79]   Given that the Government has failed to even plead a plausible basis that Mr. Davis and RRCC engaged in *fraud*, it is inconceivable that Mr. Davis or RRCC intended to engage in *theft*.

Third, the Government does not even identify any property of the United States that was purportedly stolen.

Based on the foregoing, it is clear that the Government's theory of forfeiture based on 18 U.S.C. § 641 should be dismissed.

## D.   The Court Should Dismiss This Case Because The Claimed Property Is Not An Instrumentality Subject To Civil Forfeiture.

At this juncture, the Government is seeking solely a civil forfeiture under the civil forfeiture statute—18 U.S.C. § 981(a)(1)(C).[80]   The "theory behind such forfeitures was the fiction that the action was directed against 'guilty property,' rather than against the offender himself."[81]

---

[77] *Morissette v. United States*, 342 U.S. 246, 263 (1952) ("We hold that mere omission from s 641 of any mention of intent will not be construed as eliminating that element from the crimes denounced.").

[78] *See supra* nn. 64-65.

[79] *See* 38 C.F.R. § 21.4201(e); *U.S. ex rel. Hamilton*, 2015 WL 1522174, at *4, *7-8.

[80] *See* Second Amended Complaint at 5, ¶ 8.

[81] *United States v. Bajakajian*, 524 U.S. 321, 330 (1998).

CLAIMANT RETAIL READY CAREER CENTER, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
SECOND AMENDED COMPLAINT                                          Page 18

In *Austin v. United States*, the Supreme Court held that the Eighth Amendment's "Excessive Fines Clause" applies to *in rem* civil forfeiture proceedings;[82] however, the majority declined to adopt a standard for evaluating whether the forfeiture was excessive.[83]  In a concurring opinion, Justice Scalia stated that "an *in rem* forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense".[84]  In Justice Scalia's view, "[t]he relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?"[85]

Thereafter, several of the Courts of Appeal held that property could not be forfeited unless it constituted an instrumentality of a crime.[86]  Until recently, further development of the application of the Eighth Amendment to civil forfeiture seems to have come to a halt after the Supreme Court's

---

[82] *See Austin v. United States*, 509 U.S. 602, 622, 113 S. Ct. 2801, 2812, 125 L. Ed. 2d 488 (1993) ("We therefore conclude that forfeiture under these provisions constitutes 'payment to a sovereign as punishment for some offense,' and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.") (internal citations omitted).

[83] *See Austin v. United States*, 509 U.S. 602, 622 (1993) ("Austin asks that we establish a multifactor test for determining whether a forfeiture is constitutionally 'excessive.' We decline that invitation.") (internal citations omitted).

[84] *Austin v. United States*, 509 U.S. 602, 627–28 (1993) (Scalia J., concurring).

[85] *Id*. at 628.

[86] *See, e.g.*, *United States v. Chandler*, 36 F.3d 358, 365 (4th Cir. 1994) ("For these stated reasons, we now hold, in determining excessiveness of an in rem forfeiture under the Eighth Amendment, that a court must apply a three-part instrumentality test . . . ."); *United States v. 829 Calle de Madero, Chaparral, Otero County, N.M.*, 100 F.3d 734, 738 (10th Cir. 1996) ("We agree that proportionality is relevant in evaluating excessiveness, however, the connection between the property and the offense remains relevant. The first step in the inquiry is the instrumentality test, in which the government must show the existence of a connection between the forfeited property and the offense."); *United States v. One Parcel of Real Estate Located at 25 Sandra Court, Sandwich, Ill.*, 135 F.3d 462, 465 (7th Cir. 1998) (identifying which courts had adopted an instrumentality or proportionality test).

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**SECOND AMENDED COMPLAINT**</u>                                         **Page 19**

ruling in *United States v. Bajakajian*.[87]  At the time of the Supreme Court's ruling in that case, the Fifth Circuit had not addressed whether property had to be an instrumentality of a crime to be forfeitable in a civil *in rem* proceeding.

In *Bajakajian*, the defendant attempted to leave the country with $357,144 in cash without reporting that he had more $10,000 in cash.[88]  The question was whether forfeiture of the entire $357,144 was excessive under the Eighth Amendment.[89]  The Ninth Circuit applied an instrumentality and proportionality test, and held that the currency was not an "instrumentality" of the crime—failure to report.[90]  The Supreme Court defined "instrumentality":

> Although the term "instrumentality" is of recent vintage, see *Austin v. United States,* 509 U.S., at 627–628, 113 S.Ct., at 2814–2815 (Scalia, J., concurring in part and concurring in judgment), it fairly characterizes property that historically was subject to forfeiture because it was the actual means by which an offense was committed. See *infra,* at 2036; see, *e.g., J.W. Goldsmith, Jr.-Grant Co. v. United States,* 254 U.S. 505, 508–510, 41 S.Ct. 189, 190–191, 65 L.Ed. 376 (1921). "Instrumentality" forfeitures have historically been limited to the property actually used to commit an offense and no more. See *Austin v. United States, supra,* at 627–628, 113 S.Ct., at 2814–2815 (SCALIA, J., concurring in part and concurring in judgment).[91]

---

[87] 524 U.S. 321 (1998).

[88] *United States v. Bajakajian*, 524 U.S. 321, 324 (1998)

[89] *See id.*

[90] *Bajakajian*, 524 U.S. at 326–27 ("Applying Circuit precedent, the court held that, to satisfy the Excessive Fines Clause, a forfeiture must fulfill two conditions: The property forfeited must be an "instrumentality" of the crime committed, and the value of the property must be proportional to the culpability of the owner. A majority of the panel determined that the currency was not an 'instrumentality' of the crime of failure to report because '[t]he crime [in a currency reporting offense] is the withholding of information, ... not the possession or the transportation of the money.'  The majority therefore held that § 982(a)(1) could never satisfy the Excessive Fines Clause in cases involving forfeitures of currency and that it was unnecessary to apply the 'proportionality' prong of the test.") (internal citations omitted).

[91] *Bajakajian*, 524 U.S. 321, 333 n.8.

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                    **Page 20**

The Supreme Court agreed that the seized currency was not an "instrumentality":

> The currency in question is not an instrumentality in any event. The Court of
> Appeals reasoned that the existence of the currency as a "precondition" to the
> reporting requirement did not make it an "instrumentality" of the offense. See 84
> F.3d 334, 337 (C.A.9 1996). We agree; the currency is merely the subject of the
> crime of failure to report. Cash in a suitcase does not facilitate the commission of
> that crime as, for example, an automobile facilitates the transportation of goods
> concealed to avoid taxes.[92]

However, the Supreme Court held that whether the currency was an instrumentality was not relevant in that case because the Government had proceeded *criminally in personam* rather than *civilly in rem*:

> Instrumentalities historically have been treated as a form of "guilty property" that
> can be forfeited in civil *in rem* proceedings. In this case, however, the Government
> has sought to punish respondent by proceeding against him criminally, *in
> personam,* rather than proceeding *in rem* against the currency. It is therefore
> irrelevant whether respondent's currency is an instrumentality; the forfeiture is
> punitive, and the test for the excessiveness of a punitive forfeiture involves solely
> a proportionality determination.[93]

For whatever reason, the Supreme Court's analysis of the instrumentality test to be applied in civil *in rem* proceedings seems to have been largely ignored by attorneys.[94]  However, recently, the Supreme Court of Pennsylvania in a lengthy and well-reasoned opinion recognized that the Eighth Amendment restricts civil *in rem* forfeitures to instrumentalities of crimes.[95]

---

[92] *Bajakajian*, 524 U.S. at 344 n. 9.

[93] *Bajakajian*, 524 U.S. at 333–34.

[94] Perhaps the Civil Forfeiture Reform Act of 2000, which occurred two years after *Bajakajian*, reduced the number of innocent persons subject to civil forfeitures.

[95] *See Commonwealth v. 1997 Chevrolet & Contents Seized from Young*, 639 Pa. 239, 287, 160 A.3d 153, 182 (2017) ("Based upon the rich history of *in rem* forfeiture both in England and our country, and the clear demarcation between criminal *in personam* proceedings and those brought civilly *in rem*, as well as more recent pronouncements by the United States Supreme Court, it is evident to us that the 'guilty property' fiction which serves as the basis for civil *in rem*

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**SECOND AMENDED COMPLAINT**</u>                                                    **Page 21**

Claimant requests that the Court follow the Supreme Court's guidance in *Bajakajian* and dismiss the claims against the Claimed Property because the Claimed Property is not an instrumentality of any crime.  Even if the Government's purported allegations of wrongdoing were correct, like the currency in *Bajakajian*, the Claimed Property is "merely the subject of the [purported] crime of failure to report" properly, not "the actual means by which an offense was committed."[96]  As such, the Claimed Property is not "guilty" and cannot be forfeited in an *in rem* civil forfeiture proceeding.   Accordingly, the claims against the Claimed Property must be dismissed.

## V.
## REQUEST FOR RELIEF

Claimant respectfully requests that the Court dismiss Plaintiff's claims for forfeiture, order Plaintiff to release and return the Claimed Property to Claimant, and grant Claimant such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,


By: /s/ Jack G. B. Ternan
Jack G. B. Ternan
State Bar No. 24060707
jt@ternanlawfirm.com
TERNAN LAW FIRM, PLLC
1400 Preston Road, Suite 400
Plano, Texas 75093
Telephone:  (972) 665-9939
Facsimile:  (972) 476-1361
**COUNSEL FOR CLAIMANT RETAIL READY CAREER CENTER, INC.**

---

forfeiture logically demands that the property sought to be forfeited be an instrumentality of the offense.").

[96] *See supra* nn. 91-92.

**CLAIMANT RETAIL READY CAREER CENTER, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**                                    **Page 22**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 7, 2018, I electronically filed the foregoing document with the Clerk for the United States District Court for the Northern District of Texas using the CM/ECF System, and that service of such filing will be made electronically on all counsel of record, including counsel for the United States of America, Joseph Andrew Magliolo.

_____ /s/ Jack G. B. Ternan
Jack G. B. Ternan

BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>SECOND AMENDED COMPLAINT</u>**                                    **Page 23**